UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PATRICK JAMES O'CONNELL,

                Plaintiff,

v.                                    **DECISION AND ORDER**
                                         11-CV-1099S

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

      1.     Plaintiff challenges an Administrative Law Judge's ("ALJ") decision, dated June 14, 2011, wherein the ALJ determined that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act through December 31, 2008, Plaintiff's last date insured. Plaintiff filed an application for disability insurance benefits alleging that he became disabled beginning August 1, 2003. He now contends that the ALJ's determination is not based upon substantial evidence, and that new evidence warrants reversal.

      2.     On May 25, 2011, the ALJ held a hearing at which Plaintiff testified. After consideration of the evidence, including Plaintiff's medical records, the ALJ denied Plaintiff's application for disability insurance benefits. On December 16, 2011, the Appeals Council denied Plaintiff's request for review. Plaintiff filed the current civil action challenging Defendant's final decision in this Court on December 30, 2011.

      3.     Plaintiff filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure on June 14, 2012. Defendant also moved for such judgment in his favor on the same date. This Court finds the matter fully briefed and oral

1

argument unnecessary. Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. § § 405(g), 1383(c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano*,* 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), *cert denied*, 459 U.S. 1212 (1983).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence

may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. § § 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

8. Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff did not engage in substantial gainful activity between August 1, 2003, his alleged onset date through December 31, 2008, the date he was last insured (R. 13);[1] (2) Plaintiff has the following severe impairments: "status post stent placement in the circumflex and left anterior descending arteries, coronary artery disease, and angina" (R. 13); (3) neither these impairments nor any combination of these impairments meets or medically equals a recognized disabling impairment under the regulations (R. 14); (4) Plaintiff retains the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. 416.1567(b) (R. 14-18); and (5) Plaintiff was capable of performing his past relevant work as a dispatcher and truck lease/sales representative, work Plaintiff performed at a sedentary level of exertion, through the date last insured. (R. 18.)

10. Plaintiff first contends that this Court should remand the matter back to the

---

[1] Citations to the administrative record will be designated as "R."

Commissioner for consideration of new evidence regarding his alleged difficulty in walking. "The Social Security Act provides that a court may order the Secretary to consider additional evidence, 'but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988) (quoting 42 U.S.C. § 405(g)). Thus, Plaintiff must establish that (1) his proffered evidence is in fact new and not merely cumulative of what is already in the record; (2) the evidence is material and probative to Plaintiff's condition during the time period for which benefits were denied; and (3) there is good cause for his failure to present the evidence earlier. Tirado, 842 F.2d at 597. "The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." Id.

Plaintiff alleged that he had difficulty walking and driving due to left foot pain and a right knee problem, which had previously been diagnosed as necrosis. (R. 33-34, 129.) Plaintiff's purported new evidence centers on the affidavit of a neurologist who began treating Plaintiff in November 2011, only 11 months after the hearing but almost three years after Plaintiff's last insured date of December 31, 2008. (Aff. of Michael R. Stoffman, M.D., ¶¶ 1, 3-4, Docket No. 8-1.) The neurologist averred that a clinical examination at that time revealed indications of a possible spinal cord and/or brain pathology. (Stoffman Aff. ¶¶ 6-9.) As a result, the neurologist ordered lumber, thoracic, and cervical spine MRI tests to be performed. (Id. ¶¶ 10-12.) A cervical spine MRI revealed "that at the C5-6 level, there was absolutely critical spinal cord compression, where the spinal cord was compressed down to 3 mm." (Id. ¶¶ 14-15.) The neurologist diagnosed Plaintiff with

5

cervical spondylotic myelopathy, opining in the present affidavit that "this is the worst case of spinal cord compression that I have seen in a patient that retains the ability to walk. In other words, it was surprising that [Plaintiff] could walk at all." (Id. ¶ 15.) It is further explained that "spinal cord compression in the neck area caused symptomatology in [Plaintiff's] lower extremities and has caused his instability to stand or walk." (Id. ¶ 16.) Surgeries were performed in January and April 2012 to alleviate the related symptoms. (Id. ¶¶ 18-22.)

As a result of his treatment of Plaintiff and his review of medical reports in the administrative record, the neurologist concluded:

> It is my opinion within a reasonable degree of medical certainty that [Plaitniff] has suffered from cervical spondylotic myelopathy since at least . . . April 23, 2007 (when [Plaintiff] started [to] see Dr. Dyster for difficulty walking) and that since at least April 23, 2007 this impairment has caused severe and marked functional limitations in basic work activities and activities of daily living.

(Id. at 25.) The neurologist further concluded that, since at least April 23, 2007, Plaintiff would have been "unable to sit for more than two hours, stand for more than one hour, or walk for more than one hour a day in an eight hour workday and would not have been able to perform even a sedentary type job on a sustained, full time basis." (Stoffman Aff. ¶ 26.) Plaintiff asserts that this new information would have a material effect on an RFC assessment applicable prior to the date last insured (Pl's Mem of Law at 13-15; see R. 14.)

This Court agrees with Defendant that the proffered evidence is not material to Plaintiff's condition prior to his last insured date of December 31, 2008. Initially, as Defendant argues, the determinations regarding the nature and severity of Plaintiff's asserted impairments and his resulting RFC are administrative findings reserved to the Commissioner. See 20 C.F.R. 416.927(d)(2). Further, the neurologist's conclusion that

6

Plaintiff could not perform even sedentary work prior to December 31, 2008 is inconsistent with the record. See Snell v. Apfel, 177 F.3d 128, 132-33 (2d Cir. 1999) (treating physician's opinion will not be given controlling weight where it is inconsistent with the record as a whole); see also 20 C.F.R. § 404.1527(c).

The neurologist asserts that Dr. Dyster's April 23, 2007 note that Plaintiff "walk[ed] with a limp on the right despite having only mild knee pain" is "consistent with" his diagnosis that Plaintiff has suffered from progressively worsening cervical spondylotic myelopathy since 1997. (Stoffman Aff. ¶ 23; see R. 236.) This may be true, but new evidence is not material if it tends to establish only "a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." Cassera v. Sec'y of Health and Human Servs., 104 F.3d 355, 1996 WL 734048, *2 (2d Cir. 1996) (quoting Szubak v. Sec'y of HHS, 745 F.2d 831, 833 (3d Cir.1984)). Neither the neurologist's affidavit nor the treatment records of Dr. Dyster provide any evidence that Plaintiff had a walking limitation more severe than a mild limp before December 31, 2008. Indeed, it is unclear whether Plaintiff's ability to walk deteriorated significantly by the time of the hearing. After the ALJ commented that Plaintiff was limping when he came into the hearing, (R. 33), Plaintiff asserted "that's my pace right now." (R. 50.)

Further, as discussed by the ALJ in his decision, (R. 14), Plaintiff reported in June 2007 that his right knee was "weak" and that he had previously been diagnosed with necrosis by a Dr. Bax. (R. 235.) Dr. Dyster's objective assessment indicated only mild crepitation.[2] (Id.) Plaintiff denied leg or knee pain in January 2008, and an objective assessment of his musculoskeletal system revealed a normal gait and station. (R. 233.)

---

[2]Crepitation is a "grating or crackling sound or sensation." Merriam-Webster's Medical Dictionary 151 (1993).

7

Dr. Dyster noted in December of 2008 that Plaintiff had a limited range of motion in his right knee, but again no pain. (R. 232.) Although the neurologist relied on Plaintiff's request for a handicap parking sticker, Dr. Dyster's notes indicate that granting the request would depend on the results of an x-ray. (R. 232; Stoffman Aff. ¶ 23.) As the ALJ notes, Plaintiff did not pursue the recommended x-ray, (R. 14), and the issue was not pursued again for another ten months. (R. 228-29, 232.) Plaintiff consistently continued to complain of a "limp" in his right leg as late as January 2011. (R. 257.)

Plaintiff highlights his testimony that a cane was recommended by the orthopedic surgeon who diagnosed him with necrosis in the right knee. (Pl's Mem of Law at 3; R. 38.) Plaintiff further testified, however, that he could "get around a little quicker just, just walking," and although he was at times "a little bit slower than normal," he used the cane only once or twice a year. (R. 38-39.) Indeed, according to the record, it was not until October 2009, ten months after the date last insured, that Plaintiff reported "*occasional* tingling in legs with sitting to[o] long or if walking for long distances," and that he was "unable to exercise due to a decreased ability to walk." (R. 228 (emphasis added).) This is also consistent with Plaintiff's own testimony at the hearing that the numbness in his feet and hands started before 2008 "but it's gotten far . . . worse now." (R. 38; see R. 27 (hearing held two years after Plaintiff's last insured date.) Records from December 2009 similarly reflect Plaintiff's complaint that his "left foot has been painful to walk on *recently*," but there is no mention of an inability to sit for extended periods of time. (R. 249-50 (emphasis added).) Accordingly, although the record is consistent with the neurologist's conclusion that Plaintiff suffered from progressively worsening condition, (Stoffman Aff. ¶ 24), it does not support the conclusion that, prior to December 31, 2008, Plaintiff's

condition had deteriorated to the point where he would not have been able to perform his former job as concluded by the ALJ. This Court cannot therefore conclude that there is a reasonable possibility that the new evidence might influence the Commissioner to decide Plaintiff's application differently. See Tirado, 842 F.2d at 597.

11. Plaintiff next contends that the ALJ failed in his obligation to develop the record. Plaintiff is correct that, due to the non-adversarial nature of a benefits proceeding, the ALJ has a duty to affirmatively develop the record by making every reasonable effort to obtain a complete medical history from medical sources. See 20 C.F.R. § 404.1512(d); Lamay v. Comm'r of Social Sec., 562 F.3d 503, 508-9 (2d Cir. 2009), *cert denied*, 130 S. Ct. 1503 (2010). Plaintiff argues that his testimony alerted the ALJ to the existence of additional medical records from a Dr. Bax and a Dr. Samguchi. With respect to Dr. Bax, Plaintiff asserts that ALJ failed to obtain Plaintiff's original treatment records with this physician from 1997. (Pl's Mem of Law at 16-17.) Notably, this is over a decade prior to Plaintiff's application for benefits. (R. 55.) See generally 20 C.F.R. § 404.1512 (d)(2)(a complete medical history means records of medical sources covering at least 12 months prior to the month in which the application was filed).

Further, Plaintiff admits that the ALJ obtained this physician's office notes related to Plaintiff's treatment immediately prior to the hearing in 2011. (Pl's Mem of Law at 18, R. 263.) These notes reflect that Plaintiff reported at that time that his right knee was "giving way," but there is nothing in Dr. Bax's finding of a possible arthritic condition that is inconsistent with the earlier findings that Plaintiff had only a mild limp. (R. 263.) Indeed, Dr. Bax's own examination findings were that Plaintiff walked "with a limp," but also had a "good range of motion of the knee." (R. 263.)

9

In the absence of any gaps in the record for the relevant time period prior to Plaintiff's last insured date, or any inconsistencies between Dr. Bax's 2011 findings and those of Plaintiff's other treating physicians, there was no cause for the ALJ to further develop the record. See Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999). Similarly, the fact that Plaintiff began seeing a neurologist, Dr. Samguchi, in 2011 is consistent with Plaintiff's admitted progressive symptoms, and does not create a conflict regarding Plaintiff's ability to walk in 2008 that would require further development of the record to resolve. (R. 34, 49.) Id.

12.     In light of the above discussion, there is substantial evidence to support the ALJ's determination that Plaintiff's right knee dysfunction was not a severe impairment. Plaintiff's argument on this point is therefore rejected.

13.     Plaintiff next argues that the ALJ did not apply the correct legal standards in evaluating his credibility. Credibility determinations are generally reserved to the Commissioner, not the reviewing court. Selian v. Astrue, – F.3d –, 2013 WL 627702, *10 (2d Cir. 2013); Aponte v. Sec'y, Dep't of Health and Human Servs., 728 F.2d 588, 591 (2d Cir. 1984). After consideration of the decision as a whole, this Court concludes that the ALJ set forth the essential findings upon which his credibility decision was based, and with sufficient particularity to allow review. See Leavitt v. Astrue, No. 08-CV-731S, 2010 WL 419970, *4 (W.D.N.Y. Jan. 29, 2010) (where record permits determination of the ALJ's rationale, specific mention of every item considered is not required) (citing Mongeur v. Heckler, 722 F.3d 1033, 1040 (2d Cir. 1983)). Here, the ALJ relied on the lack of objective evidence of a right knee impairment prior to the date last insured, specifically noting that, during the relevant time period, Plaintiff complained of only mild knee pain, failed to follow

through with a recommended knee x-ray, and his examination findings were within normal limits. (R. 14.)  Plaintiff argues that the lack of pain complaints is irrelevant where his problem was in "his knee giving out and difficulty walking." (Pl's Mem of Law at 24.)  As discussed above, however, complaints regarding ambulatory problems more severe than a mild limp are not shown until after the date last insured.  Remand is therefore not warranted based on this issue.

14.     For the foregoing reasons, the Court concludes that the ALJ's determination that Plaintiff had the capacity to perform his past relevant work as of the date he was last insured is supported by substantial evidence.  Plaintiff's Motion for Judgment on the Pleadings is denied, and Defendant's motion is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 7) is DENIED;

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 9) is GRANTED;

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated:  March 28, 2013
        Buffalo, New York

                                                    /s/William M. Skretny
                                                    WILLIAM M. SKRETNY
                                                         Chief Judge
                                                    United States District Court